**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

HERMAN TEAGUE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　**Case No. CIV-20-170-JED-JFJ**
　　　　　　　　　　　　　　　　　)
SCOTT CROW, in his official capacity　)
as Director of the Oklahoma Department )
of Corrections, et al.,　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)

---

**DEFENDANTS HUNTER, CROW AND MARTIN'S RESPONSE
AND OBJECTION TO PLAINTIFF'S PETITION FOR WRIT OF
HABEAS CORPUS, MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR TEMPORARY INJUNCTION**

---

**KARI Y. HAWKINS, OBA #19824**
**JACQUELINE R. ZAMARRIPA, OBA # 33647**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Section
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  (405) 521-3921
Facsimile:  (405) 521-4518
Email:  Kari.Hawkins@oag.ok.gov
Email:  Jackie.Zamarripa@oag.ok.gov
*Attorneys for Defendants Hunter, Crow and
Martin*

May 4, 2020

# TABLE OF CONTENTS

**DEFENDANTS HUNTER, CROW AND MARTIN'S RESPONSE
AND OBJECTION TO PLAINTIFF'S PETITION FOR WRIT OF
HABEAS CORPUS, MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR TEMPORARY INJUNCTION** ........................................... 1

**INTRODUCTION** ..................................................................................................... 1

**ARGUMENT AND AUTHORITY** ................................................................................ 2

**PROPOSITION I**

**VENUE AND JURISDICTION ARE IMPROPER IN THE NORTHERN DISTRICT** ......... 2

**PROPOSITION II**

**PLAINTIFF FAILED TO EXHAUST STATE AND ADMINISTRATIVE
REMEDIES ON ALL CLAIMS ASERTED IN THIS ACTION** ......................................... 4

**A. Exhaustion under the PLRA** ............................................................................ 4

    1.  General Exhaustion Requirement ........................................................... 4

    2.  The Oklahoma Department of Corrections' Exhaustion Policy .............. 5

    3.  Plaintiff's Failure to Exhaust ................................................................. 6

**B. Exhaustion under 28 U.S.C. § 2241** ................................................................. 7

    1.  General Exhaustion Law ......................................................................... 7

    2.  Plaintiff's Failure to Exhaust ................................................................. 8

**C. Conclusion** ...................................................................................................... 12

**PROPOSITION III**

**PLAINTIFF IS NOT ENTITLED TO A TEMPORARY
INJUNCTION OR RESTRAINING ORDER** ............................................................... 13

**A. Legal Standard for Injunctive Relief** ............................................................... 13

**B. Plaintiff's Motion for a Temporary Restraining Order is not adequately
supported by an affidavit or verified complaint as required by Fed. R. Civ.
P. 65(b)(A).** ....................................................................................................... 15

**C.  Plaintiff does not meet the criteria for issuance of a Temporary Restraining Order or Preliminary Injunction** ........................................................................... 17

1. Irreparable Harm ................................................................................................ 17

2. Plaintiff will not succeed on the merits of his claim ............................................. 19

3. Plaintiff's threatened injury does not outweigh harm to Defendants and granting a TRO or preliminary injunction would be adverse to the public interest ................................................................................................................. 24

**CONCLUSION** ........................................................................................................... 25

## **TABLE OF AUTHORITIES**

### **CASES**

*Awad v. Ziriax*,
   670 F.3d 1111 (10th Cir. 2012) ................................................................. 24

*Barney v. Pulsipher*,
   143 F.3d 1299 (10th Cir. 1998) ................................................................. 20

*Beaudry v. Corr. Corp. of America*,
   331 F.3d 1164 (10th Cir. 2003) ................................................................... 7

*Booth v. Churner*,
   532 U.S. 731 (2001) ............................................................................... 4, 7

*Bradshaw v. Story*,
   86 F.3d 164 (10th Cir. 1996) ....................................................................... 2

*Brewer v. Mullin*,
   130 F.App'x 264 (10th Cir. 2005) ................................................................ 4

*De Beers Consol. Mines, Ltd. v. United States*,
   325 U.S. 212 (1945) ................................................................................. 14

*Dever v. Kansas State Penitentiary*,
   36 F.3d 1531 (10th Cir. 1994) ..................................................................... 8

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
   356 F.3d 1256 (10th Cir. 2004) ................................................................. 17

*El'Amin v. Pearce*,
   750 F.2d 829 (10th Cir. 1984) ................................................................... 21

*Estelle v. Gamble*,
   429 U.S. 97 (1976) ................................................................................... 21

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ..................................................................... 20, 21, 23

*Fish v. Kobach*,
   840 F.3d 710 (10th Cir. 2016) ................................................................... 18

*Free the Nipple*,
   237 F.Supp.3d 1126 (10th Cir. 2017) ........................................................ 24

*Garza v. Davis*,
   596 F.3d 1198 (10th Cir. 2010) .................................................................. 8

*General Motors Corp. v. Urban Gorilla, LLC*,
   500 F.3d 1222 (10th Cir. 2007) ................................................................ 14

*Goodpaster v. Oklahoma Gas & Elec. Co.*,
   291 F.2d 276 (10th Cir. 1961) .................................................................. 24

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*,
   415 U.S. 423 (1974) ................................................................................ 13

*Greater Yellowstone Coal. v. Flowers*,
   321 F.3d 1250 (10th Cir. 2003) ................................................................ 18

*Hamm v. Saffle*,
   300 F.3d 1213 (10th Cir. 2002) .................................................................. 7

*Heideman v. S. Salt Lake City*,
   348 F.3d 1182 (10th Cir. 2003) ................................................................ 17

*Helling v. McKinney*,
   509 U.S. 25 (1993) .................................................................................. 24

*Hewitt v. Helms*,
   459 U.S. 460 (1983) ................................................................................ 19

*Hills Pet Nutrition, Inc. v. Nutro Products, Inc.*,
   258 F.Supp.2d 1197 (D. Kan. 2003) ......................................................... 18

*Hudson v. McMillian*,
   503 U.S. 1 (1992) .................................................................................... 19

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ................................................................................ 20

*Jernigan v. Stuchell*,
   304 F.3d 1030 (10th Cir. 2002) .................................................................. 4

*Johnson v. Christopher*,
   233 Fed. Appx. 852 (10th Cir. 2007) .......................................................... 2

*Jones v. McCracken*,
   562 F.2d 22 (10th Cir. 1977) .................................................................... 21

*Kan. Hosp. Ass'n v. Whiteman*,
    835 F. Supp. 1548 (D. Kan. 1993) ............................................................................. 13

*Knox v. Workman,* 11-CV-0449-CVE-FHM,
    2011 WL 2923866 (N.D. Okla. July 21, 2011)............................................................. 2

*Little v. Jones*,
    607 F.3d 1245 (10th Cir. 2010)...................................................... 4, 5, 6, 14

*Lorillard Tobacco Co. v. Engida*,
    213 F. App'x 654 (10th Cir. 2007) ............................................................................. 14

*Mata v. Saiz*,
    427 F.3d 745 (10th Cir. 2005).................................................................................... 20

*Mays v. Dart*,
    2020 WL 1987007 (N.D. Ill. Apr. 27, 2020) ......................................................... 10, 11

*McCormick v. Kline*,
    572 F.3d 841 (10th Cir. 2009)...................................................................................... 8

*Meachum v. Fano*,
    427 U.S. 215 ............................................................................................................. 19

*Money v. Pritzker*,
    2020 WL 1820660 (N.D. Ill. Apr. 10, 2020) ................................................................ 7

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
    389 F.3d 973 (10th Cir. 2004)................................................................................... 15

*Olim v. Wakinekona*,
    461 U.S. 238 (1983) .................................................................................................. 19

*Omega World Travel, Inc. v. Trans World Airlines*,
    111 F.3d 14 (4th Cir. 1997)....................................................................................... 14

*Penn v. San Juan Hosp., Inc.*,
    528 F.2d 1181 (10th Cir. 1975).................................................................................. 14

*Phea v. Pfeiffer*,
    2020 WL 1892427 (E.D. Cal. Apr. 16, 2020)........................................................ 8, 12

*Prairie Band of Potawatomi Indians v. Pierce*,
    253 F.3d 1234 (10th Cir. 2001).................................................................................. 18

*RoDa Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009)................................................................. 14, 15, 18

*Ross v. Blake*,
  ___ U.S. ____, 136 S.Ct. 1850 (2016) ........................................................ 6

*Sandin v. Conner*,
  515 U.S. 472 (1995) ................................................................................... 19

*Seely v. McCollum*, 16-CV-583-CVE-FHM,
  2016 WL 7971213 (N.D. Okla. Oct. 4, 2016) ........................................... 2

*Smart v. Villar*,
  547 F.2d 112 (10th Cir. 1976)..................................................................... 21

*Stouffer v. Eulberg*,
  2010 WL 567998,n.3 (W.D. Okla. Feb. 11, 2010) ..................................... 14

*TLX Acquisition Corp. v. Telex Corp.*,
  679 F. Supp. 1022 (W.D. Okla. 1987)......................................................... 13

*Turner v. Safley*,
  482 U.S. 78 (1987) ...................................................................................... 20

*United States v. Clark*,
  2020 WL 1446895 (D. Kan. Mar. 25, 2020) ................................................ 9

*VanDyke v. Louisiana Dep't of Corr.*,
  2020 WL 1869016 (W.D. La. Apr. 13, 2020)........................................... 9, 10

*Williams v. Texas*,
  2020 WL 2061520 (S.D. Tex. Apr. 29, 2020) ............................................. 9

*Wilson v. Seiter*,
  501 U.S. 294 (1991) .................................................................................... 24

*Woodford v. Ngo*,
  548 U.S. 81 (2006) .................................................................................... 4, 6

## STATUTES

### Federal

28 U.S.C. § 116 ........................................................................................... 2

28 U.S.C. § 1391 ......................................................................................... 2

28 U.S.C. § 2241 ...................................................................2, 7, 8, 10, 12, 19

28 U.S.C. § 2254 ........................................................................................ 7

42 U.S.C. § 1983 .........................................................2, 4, 7, 10, 12, 19, 20

42 U.S.C. §1997e(a) ................................................................................... 4

## RULES

Fed. R. Civ. P. 65...................................................................12, 13, 14,15, 16

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

HERMAN TEAGUE,          )
                                 )
      Plaintiff,          )
                                 )
v.                           )      **Case No. CIV-20-170-JED-JFJ**
                                 )
SCOTT CROW, in his official capacity  )
as Director of the Oklahoma Department )
of Corrections, et al.,           )
                                 )
      Defendants.      )

**DEFENDANTS HUNTER, CROW AND MARTIN'S RESPONSE
AND OBJECTION TO PLAINTIFF'S PETITION FOR WRIT OF
HABEAS CORPUS, MOTION FOR TEMPORARY RESTRAINING
ORDER AND MOTION FOR TEMPORARY INJUNCTION**

**COME NOW** Oklahoma Attorney General Mike Hunter, Oklahoma Department of Corrections Director Scott Crow and North Fork Correctional Center Warden Jimmy Martin, in their official capacities,  and submit the following response and objection to Plaintiffs' Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order and Motion for Temporary Injunction.

## INTRODUCTION

Plaintiff Herman Teague is an inmate in the custody of the Oklahoma Department of Corrections (DOC) and currently incarcerated at the North Fork Correctional Center (NFCC) in Sayre, Oklahoma.  Exhibit 1.  Plaintiff is serving multiple sentences for Child Sex Abuse and Lewd Molestation.  *Id.*  Plaintiff commenced the instant action alleging that he is at high risk of contracting COVID-19 and that Defendants have been deliberately indifferent to this risk.  Plaintiff seeks a writ of habeas corpus and/or equitable relief directing his release from the NFCC.  However, for reasons more fully set forth below,

Plaintiff's request for relief must be denied as this action is improperly filed in the Northern District of Oklahoma, Plaintiff has failed to exhaust administrative remedies and Plaintiff cannot otherwise meet the elements necessary for injunctive relief to issue.

## ARGUMENT AND AUTHORITY

### PROPOSITION I

**VENUE AND JURISDICTION ARE IMPROPER IN THE NORTHERN DISTRICT.**

The Tenth Circuit has unquestionably ruled that "[a] petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity and ***must be filed in the district where the prisoner is confined***." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)(emphasis added). *See also Knox v. Workman,* 11-CV-0449-CVE-FHM, 2011 WL 2923866, at *1 (N.D. Okla. July 21, 2011). Plaintiff is currently housed in Sayre, Oklahoma (Beckham County) at the North Fork Correctional Center. *See* Doc. 1, page 2. *See also* Consolidated Record Card at Exhibit 1. Sayre, Oklahoma, where Plaintiff is housed, is located in the Western District of Oklahoma. 28 U.S.C. § 116(c). Plaintiff's request for habeas relief under 28 U.S.C. § 2241 is therefore improperly filed in the Northern District and must be dismissed. *See Seely v. McCollum*, 16-CV-583-CVE-FHM, 2016 WL 7971213 (N.D. Okla. Oct. 4, 2016), wherein the Northern District found that it did not have jurisdiction over a claim filed pursuant to 28 U.S.C. § 2241 when the Plaintiff was housed at the North Fork Correctional Center.

Likewise, Plaintiff's claims asserted under 42 U.S.C. § 1983 are improperly filed in the Northern District of Oklahoma. Specifically, venue is proper where "[a] substantial part of the events or omissions giving rise to [Plaintiff's] claim[s] occurred… ." 28 U.S.C. § 1391(b)(2). *See also Johnson v. Christopher,* 233 Fed. Appx. 852, 854 (10th Cir.

2007)(unpublished), finding venue improper in the Eastern District of Oklahoma when no defendant was found to reside in the Eastern District and no events were alleged to have taken place in the Eastern District.  This Court may take judicial notice that Oklahoma Department of Corrections Director Scott Crow and Oklahoma Attorney General Mike Hunter, in their official capacities, are located in Oklahoma County Oklahoma. Additionally, Defendant Jimmy Martin, in his official capacity as Warden of the North Fork Correctional Center, is located in Beckham County, Oklahoma.  And, according to the Complaint, Defendant CoreCivic is headquartered in Tennessee.  Doc. 1, page 2.  Thus, no Defendant resides or is headquartered in the Northern District of Oklahoma and Plaintiff has not alleged otherwise.

Plaintiff attempts to manufacture a basis for venue in Tulsa County by claiming that Defendant CoreCivic owns the Tulsa Transitional Center.  Doc. 1, page 3.  However, Plaintiff has never been housed at the Tulsa Transitional Center.  Exhibit 1.  And while the Oklahoma Department of Corrections leases the building that houses NFCC from Defendant CoreCivic, the Oklahoma Department of Corrections is the operator of NFCC. Exhibit 2.  Any claim by Plaintiff that NFCC is operated by CoreCivic is squarely false. *See also* Exhibit 3, DOC weekly count sheet showing NFCC is a state prison as opposed to a private or "contract" facility.  Therefore, Plaintiff's effort to invoke venue in the Northern District by merely referencing CoreCivic's ownership of the Tulsa Transitional Center is procedural posturing and must fail.  For the foregoing reasons, this matter is improperly filed in the Northern District and should be dismissed in its entirety.

<u>**PROPOSITION II**</u>

**PLAINTIFF FAILED TO EXHAUST STATE AND ADMINISTRATIVE
REMEDIES ON ALL CLAIMS ASSERTED IN THIS ACTION.**

**A.      Exhaustion under the PLRA**

1.      General Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Thus, a prisoner cannot sue concerning prison conditions without first exhausting all available administrative remedies. *Booth v. Churner*, 532 U.S. 731, 733-34 (2001). Exhaustion is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. *Id* at 741. *See also Woodford v. Ngo,* 548 U.S. 81 (2006).

To properly exhaust, the prisoner must comply "with an agency's deadlines and other critical procedural rules... ." *Id.* at 90. "Simply presenting a defective or non-complying grievance...does not constitute exhaustion of remedies." *Brewer v. Mullin*, 130 F.App'x 264, 265 (10th Cir. 2005) (not selected for publication). Prisoners must exhaust remedies, even if doing so seems futile. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, a prisoner must timely exhaust each and every step of a prison system's grievance procedure in full compliance with the procedure's requirements, and partial compliance is not sufficient. *Id.* Courts will only excuse failure to exhaust if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir.

2010).   Finally, the prisoner must complete the grievance process or there is no exhaustion of administrative remedies.  *Id.*

> 2.      The Oklahoma Department of Corrections' Exhaustion Policy

The Oklahoma Department of Corrections' Policy OP-090124 ("Inmate/Offender Grievance Process") "provides a standard method by which an inmate/offender may seek formal administrative decisions or answers to issues or complaints."  Exhibit 4, page 2.  It specifically provides the multi-step exhaustion process an offender must satisfy before filing suit. *Id.*   According to OP-090124 at part V.A., an offender must first attempt to informally resolve his complaint by communicating with the appropriate staff member.  If unsuccessful, then the offender must submit a Request to Staff ("RTS") detailing the issue or incident. *Id.* at part V.B.  If the offender's complaint remains unresolved by the response to the RTS, the offender may begin the formal grievance procedure by submitting a Grievance to the reviewing authority or, if the grievance concerns a medical issue, the facility correctional health services administrator (CHSA). *Id.* at part VI.  Grievances that are an emergency or of a sensitive nature can be submitted directly to the reviewing authority or CHSA without informal resolution.  This is appropriate where the inmate faces a "substantial risk of personal injury, sexual assault or other irreparable harm… ."  *Id.* at part IX.  If a Grievance response fails to resolve the issue, the inmate must appeal to the Administrative Review Authority ("ARA") or, if the grievance concerns a medical issue, the Medical ARA.  *Id.* at part VIII.  A final ruling on the Appeal will then be issued by ARA or Medical ARA.  *Id.*  Only after all of these steps are completed correctly has the grievance process been exhausted.  Notably, the grievance process permits an offender

to grieve about, *inter alia*, conditions of confinement, medical concerns and sentence administration. *Id.* at part IV.

3.      Plaintiff's Failure to Exhaust

In the instant action, Plaintiff concedes that he has not made any effort whatsoever to exhaust administrative remedies on the claims asserted in this matter.  Doc. 1, page 30.  *See also* affidavit of NFCC Warden Jimmy Martin at Exhibit 5 and Affidavit of Mark Knutson, Manager of the Administrative Review Authority at Exhibit 6.  Plaintiff loosely suggests that any attempt at exhaustion would be futile or is excused due to the risk of irreparable harm.  Although he cites no *relevant* legal authority for this proposition as it pertains to his claims, perhaps Plaintiff will ultimately rely upon *Ross v. Blake*, ___ U.S. ____, 136 S.Ct. 1850, 1854-55 (2016) to support the idea that the grievance process was "unavailable" due to the exigent circumstances.  *Ross*, however, is easily distinguishable. In *Ross*, the Supreme Court determined that the grievance process was unavailable when it operated as a dead end, where staff was unwilling to provide relief, when the process was so opaque or unknown that it was incapable of use, and when prison staff interfered with an inmate's ability to use the procedures.  *Id.*  None of those conditions are alleged in this action.  As noted above, the DOC's grievance process is specifically designed to permit an offender to grieve about conditions of confinement, medical concerns and sentence administration.  Exhibit 4 at part IV.  Plaintiff could have even submitted an emergency grievance.  *Id.* at part IX.  Plaintiff simply refused to avail himself of the administrative remedy prior to commencement of this litigation.

In *Woodford v. Ngo, 5*48 U.S. 81, 85 (2006), the Supreme Court held that a plaintiff "must exhaust administrative remedies even where the relief sought … cannot be granted

by the administrative process."   The PLRA's exhaustion requirement is mandatory, and courts are not authorized to dispense with it. *Beaudry v. Corr. Corp. of America*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).   Specifically, this Court cannot excuse exhaustion on grounds of futility to the extent that Plaintiff asserts such a theory. *See Booth  v. Churner,* 532 U.S. 731, 741 n. 6 (2001).   For the foregoing reasons, Plaintiff's is not entitled to relief on any claim asserted in this matter, and his request for a writ of habeas corpus, a temporary restraining order and/or a preliminary injunction must be denied and this action dismissed in its entirety.

## B.   Exhaustion under 28 U.S.C. § 2241

### 1.   General Exhaustion Law

Plaintiff claims he is entitled to habeas relief under 28 U.S.C. § 2241.[1]   "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A). "A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254."   *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002) (quotation marks omitted).   A habeas "petitioner bears the burden of demonstrating that

---

[1] As another federal court recently concluded, it is less than clear that a petitioner challenging conditions in state prison due to COVID-19 is entitled to proceed in habeas as opposed to § 1983, even where he is seeking release from prison.   *See Money v. Pritzker*, No. 20-CV-2093, 2020 WL 1820660, at *9 (N.D. Ill. Apr. 10, 2020) (unpublished) (explaining that § 1983 is the typical method for challenging conditions of confinement, while a habeas petitioner seeks release from custody, and concluding "that it is abundantly clear that Plaintiffs may proceed on their claims under Section 1983 and at least plausible—though far less certain—that they also have a right to seek habeas relief as well").   In any event, even assuming that § 2241 is the appropriate vehicle through which Teague may press his claim for release from custody, he has not exhausted his state remedies, as shown, and thus relief must be denied.

he has exhausted his available state remedies." *McCormick v. Kline*, 572 F.3d 841, 851 (10th Cir. 2009) (quotation marks omitted).   In the § 2241 context, "[t]he exhaustion of state remedies includes both administrative and state court remedies." *Id.*   The exhaustion of state court remedies "is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).   "A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile." *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010).

2.      Plaintiff's Failure to Exhaust

Plaintiff makes no claim that he has attempted to exhaust his prison administrative remedies as to his claim that the Defendants are not adequately protecting him from the risk of contracting COVID-19.   (*See above analysis.*)   While Plaintiff's claims appear to be premised on his belief that the Department of Corrections is simply incapable of protecting him from the risk of COVID-19, this is entirely speculative because he has never even given the Department of Corrections to address his concerns.   *See, e.g.*, *Phea v. Pfeiffer*, No. 2:20-cv-00283 WBS GGH P, 2020 WL 1892427, at *2 (E.D. Cal. Apr. 16, 2020) (unpublished) (rejecting state habeas petitioner's request for release based on COVID-19 due to his "having diabetes, high blood pressure, asthma, dyslipidemia, history of glaucoma, and heart disease," because, *inter alia*, "prison authorities may be able to isolate highly at-risk prisoners, such as petitioner, more easily than isolation or 'social distancing' is achieved in the general population, e.g., housing in administrative segregation, partial lockdowns or transfers").   He has certainly not shown that exhaustion

8

of his prison administrative remedies is futile.

Indeed, "several federal courts have considered" claims by inmates seeking release due the risk of contracting COVID-19 and "have universally found that prisoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation." *VanDyke v. Louisiana Dep't of Corr.*, No. CV 20-0448, 2020 WL 1869016, at *2 (W.D. La. Apr. 13, 2020) (unpublished) (collecting cases).  It follows that Plaintiff's speculation that the Oklahoma Department of Corrections cannot take measures to reduce his risk of contracting COVID-19, and his utter failure to allege any attempt to exhaust administrative remedies, is insufficient to show that exhaustion is futile.  This is especially so given that Teague has not alleged even a single confirmed diagnosis of COVID-19 at his facility, the North Fork Correctional Center.  *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *5 (D. Kan. Mar. 25, 2020) (unpublished) (denying motion for temporary release from custody on grounds, *inter alia*, that the movant "admit[ted] that he is unaware of any known cases of COVID-19 at [his] facility" and his "argu[ment] that an outbreak is inevitable" was "speculative").  In fact, as of May 1, 2020, no staff or inmates were reported to have contracted COVID-19 at NFCC.  Exhibit 12.

Plaintiff has likewise completely failed to address whether he has sought any relief from the Oklahoma state courts or allege that such a request for relief is unavailable or futile.  *See, e.g.*, *Ward v. Oklahoma*, No. CFR-1984-183, Court Minute (Pontotoc County District Court Apr. 15, 2020) attached as Exhibit 7, demonstrating that such a request could have been filed and exhausted in state court.  *See also, e.g.*, *Williams v. Texas*, No. CV H-20-1352, 2020 WL 2061520, at *2 (S.D. Tex. Apr. 29, 2020) (unpublished)

(dismissing 28 U.S.C. § 2241 action filed by pretrial detainee seeking release due to COVID-19 based on his failure to exhaust state court remedies); *VanDyke*, 2020 WL 1869016, at *2 ("[I]f VanDyke seeks to bring this as a *habeas* action seeking parole [due to COVID-19], he has not alleged that he exhausted his state court administrative remedies prior to bringing suit." (emphasis in original)).

Plaintiff further admits that he has not sought early release from the Oklahoma Pardon and Parole Board, indicating his belief that such a request is futile because of "numerous waiting periods" prescribed by state statute.  Doc. 1, page 30.  Teague suggests that he would have to wait up to 120 days after the approval of a pardon application to obtain a final decision from the Governor.  *Id*.  However, while Teague has pointed to the rules governing how long a pardon application make take at a maximum, he has not alleged that the process regularly takes so long or could not be expedited in light of current circumstances.  Another federal court recently rejected a similar claim in a combination § 1983/§ 2241 action where the petitioners failed to show that they could not seek state remedies in an expedited fashion based on the COVID-19 pandemic.  *Mays v. Dart*, No. 20 C 2134, 2020 WL 1987007, at *4, 15 (N.D. Ill. Apr. 27, 2020) (unpublished).  In *Mays*, a case filed by pre-trial detainees housed at Cook County Jail in Chicago based on the risk of COVID-19 to medically vulnerable inmates, the district court rejected a claim that exhaustion of state court remedies was futile:

> The plaintiffs' contentions are not persuasive.  Their only evidence . . . describes how long such an appeal would take under ordinary circumstances.  But here we are not dealing with not ordinary circumstances.  The affidavit does not adequately show how the state appellate process would be expected to work for a medically vulnerable detainee claiming that due to a global pandemic that has infiltrated the Jail, he faces immediate risk of serious health consequences unless his bail is reduced.  We know the state courts are capable of dealing with emergency

requests of this type promptly and efficiently; Cook County trial court judges dealt quickly and efficiently with hundreds of such requests in late March, and they continue to do so now.  There is no reason to believe that the Illinois Appellate Court would treat such an appeal as an ordinary, run-of-the-mill bail issue and would refuse to deal with it promptly.  Although a court may excuse exhaustion in the unusual case where a state process would cause an unreasonable delay, the plaintiffs have not established that this is so in the present situation.

*Id.* at *15.[2]  Here, too, Plaintiff's generalized claim regarding the length of the pardon and parole process tells this Court nothing regarding the length of the process at present.

Indeed, Plaintiff's claim that he lacks a sufficiently expeditious state remedy is belied by the fact that the Governor, weeks ago, authorized numerous "commutations to decrease prison crowding and reduce the risk of a COVID-19 outbreak."  *Stitt commutes sentences for more than 450 offenders to ease crowding, reduce COVID-19 risk*, Barbara Hoberock, TULSA WORLD (Apr. 11, 2020), available at https://www.tulsaworld.com/news/stitt-commutes-sentences-for-more-than-450-offenders-to-ease-crowding-reduce-covid-19-risk/article_e7215f73-5b0e-5b2c-b095-de043a182f7d.html#1 (last visited May 1, 2020).[3]  In fact, the Governor's announcement

---

[2] Notably, the *Mays* court rejected the petitioners' futility claim despite the fact that "[i]nfection rate data reflect[ed] that it has been challenging to effectively curb transmission of the highly infectious coronavirus in the setting of the Jail. . . . [O]n April 8, 2019, the New York Times reported that, at that time, the Jail was the largest-known source of coronavirus infections in the United States."  *Mays*, 2020 WL 1987007, at *4.  In contrast, again, Teague does not allege even a single confirmed diagnosis of COVID-19 at his facility.

[3] The Director of the Pardon and Parole Board later announced that the number of inmates to be immediately released was lower than first announced.  *Number of Oklahoma inmates to be released Thursday is lower than announced*, Kayla Branch, TULSA WORLD (Apr. 16, 2020), available at https://www.tulsaworld.com/news/local/government-and-politics/technical-difficulties-hold-up-commutations/article_bbf01b48-d2f0-5229-97f5-4a2f265bafbb.html (last visited May 1, 2020) ("Every person for whom Stitt signed a commutation will still be released ahead of schedule, but the majority had other charges that were not commuted by the

of these commutations came just "*days* after [the Oklahoma Department of Corrections] announced five employees and one inmate had tested positive" for COVID-19. *Coronavirus in Oklahoma: Stitt signs over 450 commutations, reduces prison overcrowding during COVID-19 pandemic*, Kayla Branch, THE OKLAHOMAN (Apr. 10, 2020) (emphasis added), available at https://oklahoman.com/article/5659929/coronavirus-in-oklahoma-stitt-signs-over-450-commutations-reduces-prison-overcrowding-during-covid-19-pandemic (last visited May 1, 2020).  Given the apparently expedited actions by the Oklahoma Pardon and Parole Board in response to COVID-19, Teague has not shown that this executive remedy is not available to him or that seeking it would be futile. *Cf. Phea*, 2020 WL 1892427, at *2 ("[P]rison and state officials are more likely to know who may be best subject to compassionate release under state laws than is the undersigned.").

**C.   Conclusion**

Plaintiff has failed to exhaust state court and administrative remedies on his civil rights claims filed under 42 U.S.C. § 1983 and his habeas claim filed pursuant to 28 U.S.C. § 2241.  As such, his petitions for a writ of habeas corpus, temporary restraining order and temporary injunctive relief must be denied and this action dismissed in its entirety.

---

Pardon and Parole Board for which they must still serve time.").  In any event, this does not change the fact that Oklahoma's executive branch has apparently acted expeditiously in light of the COVID-19 pandemic, contrary to Teague's suggestion.

## PROPOSITION III

### PLAINTIFF IS NOT ENTITLED TO A TEMPORARY INJUNCTION OR RESTRAINING ORDER.

**A. Legal Standard for Injunctive Relief**

Federal Rule of Civil Procedure 65(b) provides that a court may issue a temporary restraining order (or "TRO") without notice to the adverse party or its attorney "only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and reasons why it should not be required." The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until a hearing can be held on a preliminary injunction. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974). "The stringent requirements imposed by . . . Rule 65, on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisdiction runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Id.* at 438-439.

Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney." See Fed. R. Civ. P. 65(b)(1). Because Defendants here had notice of Plaintiff's request, the Court should treat the request for a TRO as superseded by the alternative request for a preliminary injunction. *See, e.g., Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *TLX Acquisition Corp. v. Telex Corp.*, 679 F. Supp. 1022, 1028 (W.D. Okla. 1987); *see also* 11A Wright *et al., supra*, § 2951 (3d ed. 2013).

A preliminary injunction grants intermediate relief of the same character as that which may be finally granted. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). The Court may not enter a preliminary injunction when the movant seeks intermediate relief beyond the claims of the complaint. *See Stouffer v. Eulberg*, No. CIV–09–320–C, 2010 WL 567998, at *1, *2 n.3 (W.D. Okla. Feb. 11, 2010) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ( "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.")). Thus, "the movant must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (quotations omitted); *see also Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) ("[T]he movant [must] establish his right to such relief ... by clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief.").

It is well-settled that injunctive relief "is an extraordinary remedy" which should not be routinely granted. *See Lorillard Tobacco Co. v. Engida*, 213 F. App'x 654, 656 (10th Cir. 2007); *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). To obtain a preliminary injunction, the moving party bears the burden of showing "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Further, where the movant requests injunctive relief that is mandatory as opposed to prohibitory—as in this case—the request

must be "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). In such cases, the movant must make a heightened showing of the above factors. *RoDa Drilling Co.*, 552 F.3d at 1208. Moreover, Rule 65(c) states that "[t]he court may issue a preliminary injunction or a temporary restraining order **only if** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

In this action, Plaintiff seeks mandatory relief and clearly asks this Court to *improve upon* the status quo by releasing him from confinement prior to the expiration of his prison sentence.  For this reason, this Court must require Plaintiff to make a heightened showing that he is entitled to injunctive relief.

**B.     Plaintiff's Motion for a Temporary Restraining Order is not adequately supported by an     affidavit or verified complaint as required by Fed. R. Civ. P. 65(b)(A).**

Rule 65 requires an application for temporary restraining order to be accompanied by an affidavit or verified complaint setting out facts clearly showing that immediate and irreparable injury, loss, or damage will result before the adverse party can be heard. Here, Plaintiff filed the present request for injunctive relief "directing Defendants to take all actions necessary [for] the immediate release of Mr. Teague" due to his age and health conditions which "place him in the highest risk category during the COVID-19 pandemic." Doc. 1, pages 5 and 15. Plaintiff further asserts that COVID-19 poses a significant risk to his health merely because he is incarcerated within tight quarters in an allegedly overcrowded Oklahoma prison. *Id.* at page 12.  In support, Plaintiff cites to a variety of

sources and websites regarding the dangers of COVID-19 in general and in correctional institutions across the country.

Notably, Plaintiff attaches three affidavits submitted in other federal lawsuits, providing opinions and recommendations regarding another state's facility, but submits them on his own behalf to support his contentions against the DOC. *See* Docs. 1-2, 1-3 and 1-4.  Two of the attached affidavits were submitted by medical and/or correctional specialists asked to review specific documentation by the Public Defender Service for the District of Columbia regarding the risk of contracting and developing complications from exposure to COVID-19 ***within the District of Columbia's prisons***. *See Declaration of Dr. Jaimie Meyer*, attached as Doc. 1-1, and *Declaration of Dr. Marc Stern*, attached as Doc. 1-2. Plaintiff also attaches an affidavit submitted in the Northern District of Texas where a specialist was asked for his opinion regarding ***operations at the Dallas County Jail. See Declaration of Robert L. Cohen, M.D.***, attached as Doc. 1-3.  This Court should not consider these affidavits submitted in support of other federal lawsuits wherein the opinions generated are specific to the prison's conditions they were asked to review, *i.e.* the District of Columbia and Dallas. These affidavits were not voluntarily submitted for this matter and they do not form an opinion regarding the implementation of ODOC's policies and procedures at any Oklahoma prison, despite Plaintiff's suggestion otherwise. As such, these professionals have no apparent personal knowledge of ODOC's pandemic response and therefore cannot be called to testify in the Northern District of Oklahoma in support of Plaintiff's contentions. These declarations are not valid affidavits pursuant to Fed. R. Civ. P. 65(b)(A).

Plaintiff also submits an affidavit on behalf his fiancé who purports to have personal knowledge of what North Fork Correctional Center is doing, or not doing, in response to COVID-19. *See Affidavit of Assunta Cox*, Doc. 1-4. However, her conclusory allegations are contradicted by the policies and procedures specially implemented by the Oklahoma Department of Corrections and officials with North Fork Correctional Center, which clearly demonstrate all the measures NFCC has taken and continues to adapt and implement on a daily basis[4]. *See* Exhibits 8-17.  As such, Plaintiff's Motion is not adequately supported by any of the attached affidavits and Plaintiff is not entitled to a temporary restraining order or preliminary injunctive relief.

**C.     Plaintiff does not meet the criteria for issuance of a Temporary Restraining Order or Preliminary Injunction.**

1.  Irreparable Harm

It must be emphasized that "courts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered*." Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 356 F.3d 1256, 1260 (10th Cir. 2004) (alteration and quotations omitted).  To meet the "irreparable harm" requirement, the plaintiff must establish that an injury is both imminent and not theoretical. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Here, to support

---

[4] Referenced policies and procedures of the North Fork Correctional Center, which contain sensitive security information, will be submitted to the Court for *in camera* review upon order of the Court if the Court determines they are necessary to rule in this matter. Because there is no protective order in place in this action and Plaintiff's claims appear subject to dismissal, Defendants are not inclined to disclose said information to Plaintiff at this juncture.

his Eighth Amendment claim, Plaintiff alleges that ODOC "cannot protect the health and safety of [Plaintiff] who is high risk…" and they "lack the flexibility to protect the health of high risk inmates from COVID-19", and he is therefore at grave risk of contracting COVID-19. Doc. 1 at p. 9.  Although irreparable harm "does not readily lend itself to definition," "a plaintiff must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (internal quotation omitted). That harm "must be both certain and great" and not "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001) (internal quotation marks and citation omitted); *see also RoDa Drilling Co.*, 552 F.3d at 1210 (holding "[p]urely speculative harm will not suffice" to satisfy the burden of showing irreparable injury). Moreover, the injury must be "likely to occur before the district court rules on the merits." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1260 (10th Cir. 2003).

Here, Plaintiff argues that he will be irreparably harmed because his health and age make him more susceptible and at greater risk of contracting COVID-19 and he "faces a heightened risk of dying" if he contracts the virus. Doc. 1 at p. 5. However, there is no allegation in Plaintiff's Motion that COVID-19 is currently affecting any ODOC staff or inmate residing at NFCC.  In fact, current reports indicate that it is not.  Exhibit 12.  While the moving party is not required to demonstrate the certainty of an injury occurring, a speculative injury or the mere possibility of harm will not suffice for the issuance of a preliminary injunction. *Hills Pet Nutrition, Inc. v. Nutro Products, Inc.,* 258 F.Supp.2d 1197, 1205–06 (D. Kan. 2003).   Because Plaintiff describes harm that is purely

speculative or a mere possibility, he cannot meet the requirements for a TRO or preliminary injunction.

      2.      Plaintiff will not succeed on the merits of his claim.

      For reasons more fully set forth in Proposition II, *supra*, Plaintiff cannot succeed on the merits of his claims filed pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2241 because he failed to exhaust administrative remedies.  Additionally, to the extent that Plaintiff is merely seeking a transfer of housing, as opposed to discharge, from a state-operated facility to some other location, it is well settled that inmates have no constitutional right to be housed in the location of their choice.  *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) and *Meachum v. Fano,* 427 U.S. 215, 225.   Furthermore, the United States Supreme Court has stated that prison officials retain broad discretion and authority over the housing assignment of inmates.  *Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983), *receded from on other grounds, Sandin v. Conner*, 515 U.S. 472 (1995). The United States Supreme Court has also said that prison administrators are accorded wide-ranging deference in the adoption and execution of policies and practices which, in their judgment, are needed to preserve internal order and discipline and to maintain institutional security.  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  "[T]he problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of

judicial restraint. Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities. *Turner v. Safley*, 482 U.S. 78, 84-85 (1987) (internal citations and quotations omitted).

With regard to his deliberate indifference claim, Plaintiff fails to plead sufficient facts to demonstrate that the Defendants have violated his Eighth Amendment rights. Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)). *See also Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) ("Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety.").

To establish deliberate indifference based on prison officials failing to attend to an inmate's serious medical needs, a § 1983 plaintiff must satisfy an objective and subjective component. *See Mata v. Saiz,* 427 F.3d 745, 751-752 (10th Cir. 2005). First, under the objective component, the deprivation must be sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. *Farmer v. Brennan,* 511 U.S. at 834.  Second, under the subjective component, the prison official must have acted with a sufficiently culpable state of mind, namely "deliberate indifference to inmate health or safety." *Id.* In this regard, deliberate indifference is established only when a prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate

that harm. *Id.* at 837-38.  For instance, the intentional denial or delay of access to medical care or intentional interference with treatment may constitute deliberate indifference. *Estelle v. Gamble,* 429 U.S. 97, 104-105 (1976). However, a mere difference of opinion over the adequacy of medical treatment provided cannot provide the basis for an Eighth Amendment claim. *El'Amin v. Pearce,* 750 F.2d 829 (10th Cir. 1984); *Jones v. McCracken,* 562 F.2d 22 (10th Cir. 1977); *Smart v. Villar,* 547 F.2d 112 (10th Cir. 1976).

In this case, Plaintiff asserts he is at "heightened risk of contracting a deadly virus merely because he is incarcerated, and … he faces a heightened risk of dying if [he contracts] the virus." Doc. 1, page 5. Plaintiff claims that the risk is exacerbated by overcrowding in the prison system.  However, contrary to Plaintiff's claims, DOC's most recent count sheet indicates that DOC is at 95% capacity, so any claim that NFCC[5] or the prison system as a whole is overpopulated is factually inaccurate.   Exhibit 3. Furthermore, Plaintiff offers only conclusory statements to support his contention that his incarceration, in and of itself, subjects him to a heightened risk of infection from COVID-19 and a lack of treatment.

As Plaintiff is well aware, DOC has taken extraordinary and unprecedented protective measures designed to slow the spread of COVID-19 and protect the health and well-being of those who live and work in Oklahoma's state prisons, including but not limited to the following:

- As of March 13, 2020, ODOC suspended all visitation and volunteer access to facilities to safeguard inmates and staff from exposure to COVID-19. To ease

---

[5] Plaintiff's counsel incorrectly interprets the prison count sheet as indicating that NFCC is overcrowded.  However, Plaintiff's counsel appears to have failed to include bed space for the restricted housing unit (RHU) when calculating the total population of NFCC. Exhibit 3.

the strain on inmates and their families, ODOC and its contracted telecommunications company offers inmates up to ten minutes of free phones calls each week.

- As of March 18, 2020, ODOC activated its pandemic plan and began revisions to specifically address COVID-19. On this day, ODOC also suspended inmate intakes from county jails and interstate compacts.

- ODOC also instituted 14-day quarantines for any inmate moved for court appearances or medical appointments deemed necessary by the agency's chief medical officer.

- As of March 19, 2020, ODOC staff began undergoing health screenings when reporting to work.

- As of March 20, 2020, ODOC identified more than 600 employees for telework, thereby limiting further exposure to inmates.

- As of March 27, 2020, all inmates began receiving free bars of anti-bacterial soap as encouragement to frequent hand-washing.

- As of April 1, 2020, inmates working through ODOC industries began sewing cloth masks and manufacturing hand sanitizer for use inside prisons by staff and inmates.

- As of April 4, 2020, the Oklahoma Department of Health, under the direction of Governor Kevin Stiff, provided protective masks for all inmates and staff members.

- As of April 5, 2020, all Oklahoma prison inmates are secured in their cells to limit movement within facilities and protect the health of inmates and staff. Facility staff will deliver food, medicine and any other necessities to inmates to limit group gatherings and enhance social distancing. Schedules are devised for activities including making phone calls and showering.

*See* DOC publications and information at Exhibit 8 (Oklahoma Department of Corrections Pandemic Planning Guide); Exhibit 9 (Oklahoma correctional facilities enhance safety measures to stop COVID-19 spread); Exhibit 10 (Cancellation/Operational Changes); Exhibit 11 (Intake from county jail changes); Exhibit 12 (COVID-19 Stats Report); Exhibit 13 (ODOC delivers additional protective gear to staff and inmates); Exhibit 14 (Oklahoma suspends travel permits, retakings; reinstates compact transfers); Exhibit 15 (Outside

medical appointments); Exhibit 16 (In response to COVID-19, inmate visitation has ceased in state prisons); Exhibit 17 (Staff symptom screening)[6].   In addition to implementing statewide measures, North Fork Correctional Center has implemented extraordinary and unprecedented protective measures designed to slow the spread of COVID-19 and protect the health and well-being of those who live and work at NFCC. While these measures are not available for public review due to safety and security concerns, they are available to the Court for *in camera* review.   *See* footnote 4. Irrefutably, as part of its continuing response to the COVID-19 pandemic, ODOC has already taken immediate, bold and prepared steps in response to this rapidly evolving crisis, despite what Plaintiff alleges in his current motion.

When a Plaintiff seeks only "injunctive relief to prevent a substantial risk of serious injury from ripening into actual harm, the subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct." *Farmer,* 511 U.S. at 845 (quotations and citation omitted). Defendants do not marginalize the risk of harm that COVID-19 poses generally to inmates, as well as the community at large. However, there is no allegation in Plaintiff's Motion that COVID-19 is currently affecting the North Fork Correctional Center where Plaintiff currently resides and there are no plausible facts to suggest how Defendants are unconstitutionally ignoring Plaintiff's health and safety needs in response to COVID-19.

While the "deliberate indifference" inquiry is ultimately subjective, courts may properly go beyond officials' mental states and also consider "the constraints facing the

---

[6] Each of these publications are available throughout the Oklahoma Department of Corrections' public website.

official[s]" for context. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *see Helling v. McKinney*, 509 U.S. 25, 37 (1993) ("The inquiry into this factor also would be an appropriate vehicle to consider arguments regarding the realities of prison administration."). Here, the significant constraints on DOC and the specific measures that NFCC has taken in spite of those constraints preclude a finding of deliberate indifference.

> 3.   Plaintiff's threatened injury does not outweigh harm to Defendants and granting a TRO or preliminary injunction would be adverse to the public interest.

Under the heightened and disfavored injunction standard, the Plaintiff needs to make a strong showing that the balance of harms tips in his favor. *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).   In considering the public interest factor, the court is permitted to inquire whether there are policy considerations that bear on whether an injunction should issue. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.4 (2d ed.1995).    It is true that it is "always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple*, 237 F.Supp.3d 1126, 1134 (10th Cir. 2017).  However, when an injunction will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff. *Goodpaster v. Oklahoma Gas & Elec. Co.,* 291 F.2d 276, 278 (10th Cir. 1961).

In this case, Plaintiff is incarcerated for Child Sex Abuse and Lewd Molestation. Exhibit 1.    Due to the severity of his crimes, Plaintiff is not even eligible for parole consideration until December 29, 2033.  *Id*.  For obvious reasons, undermining the State of Oklahoma's authority to incarcerate a child rapist who has a purely speculative fear of

a health crisis outweighs any harm Plaintiff may sustain by having to serve his sentence, even with a medical condition.  And for more obvious reasons, discharging Plaintiff to the street after serving only a small fraction of his sentence would be adverse to the public's interest in requiring a child rapist to comply with a valid judgment and sentence entered by a court of law.

## CONCLUSION

Plaintiff is not entitled to a writ of habeas corpus, a temporary restraining order or a temporary injunction.  Plaintiff's request for relief should therefore be denied and this action dismissed in its entirety.

Respectfully submitted,

/s/ Kari Y. Hawkins
**KARI Y. HAWKINS, OBA #19824**
**JACQUELINE R. ZAMARRIPA, OBA # 33647**
Assistant Attorney General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
T:  (405) 521-3921  F:  (405) 521-4518
Email:  Kari.Hawkins@oag.ok.gov
Email:  Jackie.Zamarripa@oag.ok.gov
*Attorneys for Defendants Hunter, Crow and Martin*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of May, 2020, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Ronald C. Kaufman
6935 E. 13th Street
Tulsa, OK  74112
*Attorney for Plaintiff*

Darrell Moore
J. Ralph Moore, P.C.
P.O. Box 368
Pryor, OK  73462-0368

/s/ Kari Y. Hawkins
Kari Y. Hawkins